**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* S.J., A.J.-1, and A.J.-2

No. 18-0243 (Braxton County 17-JA-10, 11, and 12)

**MEMORANDUM DECISION**

Petitioner Mother K.J., by counsel Jared S. Frame, appeals the Circuit Court of Braxton County's February 26, 2018, order terminating her parental rights to S.J., A.J.-1, and A.J.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David Karickhoff, filed a response on behalf of the children in support of petitioner's appeal. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and terminating her parental rights based upon a finding that she failed to accept responsibility for her actions and was unlikely to successfully participate in an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court vacates the circuit court's February 26, 2018, dispositional order as it relates to petitioner, and remands the case to the circuit court with instructions to grant petitioner an improvement period and visitation with the children. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to resolve the issues presented.

In March of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the father. According to the petition, in February of 2017, the children suffered an event

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as A.J.-1 and A.J.-2, respectively, throughout this memorandum decision.

which rendered them unresponsive while in petitioner's care. The children were transported to a hospital in Braxton County, West Virginia but remained unresponsive and were then transferred to a hospital in Monongalia County, West Virginia. The DHHR alleged that the children were unresponsive for over twenty hours despite medical personnel administering Narcan and other medical assistance.[2] Petitioner notified the medical personnel that A.J.-1 had a similar incident a few months prior when she fell off of a couch and was rendered unresponsive. Additional testing was performed and the children were released to petitioner's care two days later. Subsequently, test results came back demonstrating that S.J. tested positive for a synthetic marijuana. Because all of the children exhibited the same symptoms upon admission, the medical personnel concluded that all three children ingested the same substance. However, petitioner denied possession or personal use of the substance.

After further investigating petitioner's claim that A.J.-1 suffered a similar incident after falling off of a couch, the DHHR filed an amended petition in April of 2017. The DHHR alleged that A.J.-1 was rendered unresponsive for forty-eight hours following the incident in which petitioner alleged the child fell off of a couch, but she was not definitively diagnosed with any ailment despite undergoing a series of medical tests. The child's pediatrician was contacted and he stated that A.J.-1 had no visible injury to her head and noted that, had she fallen as alleged, the child would have put her hands out to catch herself, suggesting that she would not have been rendered unresponsive by the incident described by petitioner. The DHHR, therefore, alleged that this incident arose from the child ingesting synthetic marijuana rather than an alleged fall as reported by petitioner. Regarding the February of 2017 incident, the DHHR advised that the water in petitioner's home was tested but did not contain anything that would have caused the children to test positive for synthetic marijuana.

In May of 2017, a second amended petition was filed wherein the DHHR alleged that it received audio recordings of phone calls between petitioner and the incarcerated father in which they spoke to each other using codes, indicating that they were attempting to disguise their drug use. Based on the recordings, the DHHR alleged that the children's lives were threatened as a result of their ingestion of synthetic marijuana and consequent unresponsiveness.

The circuit court held an adjudicatory hearing in June of 2017, during which petitioner stipulated to the allegations contained in the petition. Petitioner also admitted to the circuit court that she previously provided untruthful testimony at the preliminary hearing regarding her marijuana use. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Thereafter, petitioner requested a post-adjudicatory improvement period.

In November of 2017, the circuit court held a dispositional hearing. The DHHR presented the testimony of a DHHR worker who recommended termination of petitioner's parental rights, alleging that petitioner had not admitted any wrongdoing, and further recommended denying petitioner an improvement period. However, on cross-examination, the DHHR worker admitted

---

[2]The circuit court later found that the children had been unresponsive for approximately twelve hours, rather than twenty.

that she had not prepared the case plan, had not fully reviewed the case file prior to her testimony, and had not read the adjudicatory order. When asked whether reading the adjudicatory order would change her recommendation, the worker responded "I'm not sure. I'd need to read it." The DHHR worker did admit, however, that petitioner had been compliant with services offered and was bonded with her children. A service provider further testified that supervised visitation with the children went well and that the children were always excited to see petitioner.

Petitioner testified that she complied with all of her services. Petitioner provided drug screens three times a week, only once testing positive for alcohol, which she admitted was due to consuming a glass of wine with dinner the night before. Petitioner testified that she had committed "[t]he worst mistake [she] had ever made" and requested that she be granted the opportunity to participate in an improvement period. When specifically asked what she had done wrong, petitioner stated that she allowed her children around an illegal substance, specifically synthetic marijuana. The guardian recommended that petitioner be granted an improvement period as well.

After hearing argument, the circuit court took the matter under advisement and later issued an order in February of 2018, denying petitioner's request for a post-adjudicatory improvement period and terminating her parental rights. Specifically, the circuit court found that petitioner "had denied any exposure to controlled substances to hospital personnel and still denies exposure by children to synthetic [marijuana]." Later in the order, the circuit court found that, at the dispositional hearing, petitioner "finally admitted to having liquid K2 (synthetic [marijuana]) but denies exposure by the children." Moreover, the circuit court held that petitioner's explanation that A.J.-1 had been rendered unresponsive due to falling off the couch was contrary to the medical opinion of the child's pediatrician. As such, the circuit court concluded that petitioner failed to establish that she would comply with the terms and conditions of an improvement period, that there was no reasonable likelihood that she could correct the conditions of abuse in the near future, and that termination was necessary for the children's welfare. It is from the February 26, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[3]The parents' parental rights were terminated below. The children were placed in the home of the maternal grandmother with a permanency plan of adoption therein.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period based upon erroneous findings that she did not accept responsibility for her actions or demonstrate that she would fully comply with services. In support of her argument, petitioner states that she stipulated to the conditions of abuse and neglect, testified that she exposed the children to synthetic marijuana, and fully participated in the few services she was granted. We agree with petitioner.

We have long held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). Pursuant to West Virginia Code § 49-4-610(2)(B), circuit courts may grant a parent a post-adjudicatory improvement period if "[t]he [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.]"

During the proceedings below, the circuit court found that petitioner failed to accept responsibility for her actions. The circuit court further found that, at the dispositional hearing, petitioner admitted to having synthetic marijuana but continued to deny that the children were exposed to the same. However, these findings were not supported by the record.[4]

Rather, the record establishes that the DHHR worker who testified that petitioner failed to accept responsibility for her actions was unprepared to testify to the matter. The worker testified that she did not prepare petitioner's case plans. In fact, when asked whether she had anything to do with petitioner's case plan she responded "[n]o. My name is probably on them because I was the last person that handled them but, no, . . . I didn't write them, no." Further, when asked

---

[4]To the extent that the circuit court might have based these findings on petitioner's testimony at a prior hearing that A.J.-1 experienced similar symptoms months before the filing of the petition due to an alleged fall off of a couch, we note that the circuit court only found that petitioner's testimony was contrary to that of the child's pediatrician and did not enumerate any findings that the child was exposed to synthetic marijuana during that event. In fact, the record demonstrates that no drug testing was performed on the child at that time and she was never definitively diagnosed with any ailment.

whether she knew what was in the case plans, the DHHR worker admitted that she did not and had not reviewed the case plan in its entirety. After being asked several times, the worker finally conceded that she had also not read the adjudicatory order. As such, we find that the DHHR worker had no personal knowledge of the case apart from the admittedly few conversations with the active case worker, did not prepare for the hearing, and had not read petitioner's stipulation set forth in the adjudicatory order.

Moreover, contrary to the DHHR worker's testimony, there was substantial evidence that petitioner accepted responsibility for her actions and demonstrated that she was fully likely to participate in an improvement period. At the adjudicatory hearing, petitioner admitted that she provided false information to the medical personnel attending to her children and stipulated to the allegations contained in the petition. Thereafter, at the dispositional hearing, petitioner testified "I take full blame for this happening." The circuit court directed petitioner to explain what she did wrong and petitioner responded "I had an illegal substance, and I had it in the same place as my children." Further, she stated that the illegal substance to which she referred was synthetic marijuana.

Testimony also established that petitioner complied with every service she was offered. She submitted to drug screens two to three times a week for at least eight months and never tested positive for marijuana or any other illegal substance. Petitioner completed her schooling and obtained employment by the time of the dispositional hearing. She filed for divorce from her husband, whose parental rights were terminated during the proceedings below, and fully participated in supervised visitation with the children. Indeed, the same DHHR worker who recommended termination of petitioner's parental rights admitted that petitioner was compliant with supervised visitation, that the DHHR had no concerns regarding the same, and that petitioner attended every multidisciplinary team meeting and court hearing. The service provider also testified that the supervised visits went "[g]reat" and that she did not have any concerns with petitioner. Based upon this testimony, the circuit court found that petitioner had a strong bond with the children.

Having reviewed the record, we find that the circuit court abused its discretion in denying petitioner a post-adjudicatory improvement period. Here, petitioner accepted responsibility for her actions, complied with every service offered to her, and had a strong bond with the children, all of which lends itself to the conclusion that she was likely to fully participate in an improvement period and should have been granted one. Because we are vacating the dispositional order so that petitioner can be granted an improvement period, we decline to address the termination of her parental rights at this time.

For the foregoing reasons, we vacate the circuit court's February 26, 2018, dispositional order as it relates to petitioner[5], and remand this matter to the circuit court with instructions to

---

[5]To the extent that the dispositional order discusses disposition of the father's parental rights, we note that we do not vacate and remand the matter with regard to him as this Court

(continued . . .)

grant petitioner an improvement period and hold any further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The circuit court is hereby ordered to hold the appropriate hearings in this case within sixty days, and supervised visitation between petitioner and the children is to be reinstated immediately, with specific instruction to ensure the children's well-being while in petitioner's care. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

**DISSENTING:**
Justice Tim Armstead

---

affirmed the termination of his parental rights by memorandum decision. *See In re S.J., A.J.-1, and A.J.-2*, No. 18-0272, 2017 WL 4944964 (W.Va. Oct. 12, 2018)(memorandum decision).